```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
James Stevens,                          :
                                        :
               Petitioner,              :
                                        :  10 Civ. 3471 (RJH)(THK)
                                        :
     -against-                          :
                                        :  REPORT AND RECOMMENDATION
William Lee,                            :
                                        :     (PRO SE)
               Respondent.              :
---------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/19/11

**TO: HON. RICHARD J. HOLWELL, UNITED STATES DISTRICT JUDGE.**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

On October 23, 2007, Petitioner James Stevens was convicted in New York State Supreme Court, Sullivan County, upon his guilty pleas, of Rape in the First Degree (four counts), Sodomy in the First Degree (four counts), Predatory Sexual Assault Against a Child, and Course of Sexual Conduct Against a Child in the First Degree (two counts). On October 29, 2007, Petitioner was sentenced to a prison term of twenty-five years on each count, to run concurrently, with five years of post-release supervision on the first ten counts and post-release supervision for life on the charge of Predatory Sexual Assault Against a Child. At a resentencing hearing on January 3, 2008, Petitioner's conviction for Predatory Sexual Assault Against a Child was reduced to Course of Sexual Conduct Against a Child in the First Degree, and Petitioner was sentenced to twenty-five years in prison to run concurrently with his other sentences.

Petitioner, proceeding pro se, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that he was denied the effective of assistance of counsel. (See Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus, filed Apr. 15, 2010 ("Pet."), at 6.)   The Petition was referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(B) and (C). Having considered the parties' submissions and the state court record, for the reasons that follow, the Court respectfully recommends that the Petition be denied and Petitioner's claims be dismissed with prejudice.

### BACKGROUND

I. Factual History

On March 23, 2007, the State Police arrested Petitioner and charged him by felony complaint with Rape in the First Degree, Course of Sexual Conduct against a Child in the First Degree, and two counts of Endangering the Welfare of a Child.   (See Petitioner's Brief to Appellate Division ("Pet'r's App. Brief"), attached as Exhibit 1 ("Ex. 1") to Response at 1.)   At the police barracks, Petitioner gave a four-page written statement admitting sexual contact with his two stepdaughters beginning when the children were ten-years-old and fourteen-years-old, respectively. (See id.; Petitioner's Written Confession ("Pet'r's Confession"), attached as Ex. C to Response at 2.)   Petitioner's statement

2

provided details about the abuse, including the location and circumstances surrounding the encounters. (See Pet'r's Confession at 2-3.) Petitioner also described his own experiences as a victim of sexual abuse when he was a child (see id. at 3-4) and wrote a separate letter of apology to his stepdaughters (see Petitioner's Letter of Apology to His Victims, attached as Ex. D to Response).

Soon after his arrest, Petitioner retained Sol Lesser to represent him. (See Affidavit of James Stevens, ("Stevens Aff."), attached as Ex. G to Response at 1 ¶ 1.)  Mr. Lesser filed his notice of appearance on March 27, 2007. (See Affidavit of District Attorney Stephen F. Lungen ("Lungen Aff."), attached as Ex. H to Response at 2.)  On May 2, 2007, before grand jury indictment, Mr. Lesser negotiated a plea agreement with the district attorney whereby Petitioner would plead guilty to certain sex crimes in return for a definite sentence of fifteen years in prison. (See Stevens Aff. at 1 ¶ 2; Lungen Aff. at 2.)  Although Petitioner was "unhappy" with this plea arrangement, he informed Mr. Lesser that he would accept the deal. (See Stevens Aff. at 1 ¶¶ 2-3.)

Before the plea agreement could be executed, Mr. Lesser went on vacation. (See Lungen Aff. at 2.)  Petitioner decided to seek a second opinion on the plea agreement. (See Stevens Aff. at 1 ¶ 4.)  Petitioner consulted Glenn Kroll, meeting with him three times in May 2007. (See id. at 1 ¶¶ 4-5.)  According to Petitioner, Mr.

3

Kroll told Petitioner "we can beat this" and that he "[knew] the judge personally." (Id. at 1 ¶ 6.)  Mr. Kroll allegedly also told Petitioner that Mr. Lesser was "full of crap" and "running scared." (Id.)  According to Petitioner, Mr. Kroll then explained how Petitioner could "beat" the case by "pay[ing] the [victim] off" and getting her "out of the country or state." (See id. at 1-2 ¶ 7.) Mr. Kroll allegedly proceeded to call Petitioner's adult son, James Stevens Jr.,  and asked him to offer money to the victims in exchange for them agreeing not to testify. (See id. at 2 ¶ 8; Lungen Aff. at 4 ¶ 10(a).)  According to Mr. Stevens Jr., Mr. Kroll instructed him to offer one of the victims, Kristina, $22,000.00 and Petitioner's Harley Davidson motorcycle. (See Lungen Aff. at 4 ¶ 10(a).)  Mr. Stevens Jr. conveyed the offer to Kristina, who rejected it. (See id. at 4 ¶ 10(b).)  When Mr. Stevens Jr. informed Mr. Kroll of the rejection, he was instructed to make another offer, which was also rejected. (See id. at 4 ¶¶ 10 (c)-(e).)

The second victim, Kyra, was still living with her mother, Petitioner's wife, Heidi Ulvila, at this time.  According to the district attorney, Ms. Ulvila attended meetings with Petitioner and Mr. Kroll and encouraged Kyra not to testify against her stepfather. (See id. at 5 ¶ 11.)  Allegedly, Mr. Kroll also met

with Kyra in his office and secured a promise from the girl not to testify. (See id. at 5 ¶ 12.)

On May 19, 2007, Petitioner met with Mr. Lesser. (See First Counsel's May 21, 2007 Letter ("First Counsel's Letter"), attached as Ex. J to Response.) During this meeting, Mr. Lesser reviewed the plea offer and the strengths of the state's case, explained the risks of rejecting the plea, and offered his professional opinion that Petitioner should accept the plea offer. (See id.) Nevertheless, two days later, on May 21, Petitioner called Mr. Lesser and informed him that he was rejecting the plea and retaining new counsel. (See id.) Mr. Lesser immediately informed the district attorney of Petitioner's decision to reject the plea offer. (See id.) On that same day, Petitioner's wife retained Mr. Kroll to represent Petitioner and wrote him a check as a $5,000 retainer fee. (See Affidavit of Heidi Ulvila-Stevens ("Ulvila Aff."), attached as Ex. A to Pet'r's Reply Affirmation at 1-2 ¶ 6.)

Upon Petitioner's rejection of the plea offer, the district attorney revoked all offers and submitted the case to the grand jury on May 23, 2007. (See Lungen Aff. at 3.) The first victim, Kristina, testified before the grand jury on May 23. (See id. at 5 ¶ 10(f).) After a petition was filed against Ms. Ulvila and Petitioner in Family Court, the district attorney was able to meet with the second victim, Kyra, and she eventually testified before

5

the grand jury.  (See id. at 5 ¶¶ 11-12.)  Petitioner was arraigned on the first indictment, which included 142 separate counts regarding Kristina, on May 31, 2007.  (See id. at 3.)  Mr. Kroll made his first appearance as Petitioner's attorney on this date. (See id.)  On June 4, 2007, Petitioner was remanded to the county jail after his bail was increased to $500,000.00.  (See id.) Petitioner was arraigned on the second indictment, which included ten counts regarding Kyra, on June 21, 2007.  (See id.)

According to Petitioner, two and a half weeks after his arraignment, Mr. Kroll informed Petitioner that he was "trying to get Kristina out of the picture" and then "the other one will not bother to talk."[1]  (Stevens Aff. at 2 ¶ 12.)  Petitioner asserts that after this meeting he had no meaningful contact with Mr. Kroll, and that Mr. Kroll refused to take his calls or respond to his letters.  (See id. at 2-3 ¶¶ 13-14.)  However, Mr. Kroll represented Petitioner at numerous Family Court appearances and court appearances for the indicted offenses throughout the summer. (See Lungen Aff. at 6 ¶¶ 16-17.)  On September 17, 2007, Petitioner and Mr. Kroll met in person before a criminal court hearing.  Mr. Kroll informed Petitioner that he was going to have to take a plea because "there was no way they could fight this charge."  (Id. at

---

[1] The affidavit does not indicate whether it was the arraignment on the May 31, 2007 or the June 21, 2007 indictment.

3 ¶ 15.)  The plea agreement arranged by Mr. Kroll specified that
Petitioner would receive a prison sentence within the range of
eighteen and twenty-five years in exchange for pleading guilty to
numerous charges.  (See Answer at 3 ¶ 9.)  Petitioner agreed to the
plea arrangement and entered his guilty pleas on September 17,
2007.  (See id.)  He allocuted to having sexual intercourse and
oral sex with Kristina, and to raping and sodomizing her on various
occasions; he further allocuted to having oral sex with Kyra on
multiple occasions.  He did not raise any issues as to Mr. Kroll's
representation.  On October 23, 2007, the date of sentencing,
Petitioner made an oral application to withdraw his guilty pleas,
claiming that his confession was fabricated.  (See id. at 3 ¶ 10.)
Again, at that time, Petitioner did not raise any issues as to Mr.
Kroll's  representation.  The  court  rejected  Petitioner's
application and sentenced him to twenty-five years in state prison;
it also issued a permanent order of protection for the benefit of
both victims.  (See id. at 3 ¶¶ 10-11.)

    II. <u>Procedural History</u>

    A. <u>Section 440 Motion</u>

On February 26, 2008, Petitioner filed a motion pursuant to
New York State Criminal Procedure Law § 440 for post-judgment
relief, seeking resentencing to a fifteen-year determinate sentence

7

on all counts.[2]  (See Petitioner's 440 Motion to Vacate His Sentences, attached as Ex. G to Response.)  In his Memorandum of Law, Petitioner contended that he received ineffective assistance of counsel, entitling him to post-conviction relief.  (See Petitioner's Memorandum of Law ("Mem.") in Support of § 440 Motion, attached as Ex. G to Response.)  Specifically, Petitioner claimed that by advising Petitioner to reject the May 2007 plea offer and pursue an illegal course of action to prevent the victims from testifying, Mr. Kroll's representation was ineffective.[3]  The Memorandum asserted that Petitioner was prejudiced by Mr. Kroll's ineffectiveness because, as a result of consulting with Mr. Kroll, Petitioner rejected the plea bargain offering a definite fifteen-year prison sentence, and, instead, received a twenty-five year prison sentence.  The Memorandum requested that Petitioner be placed in the position he would have been in but for Mr. Kroll's ineffective assistance of counsel, and that the court resentence Petitioner to a fifteen-year prison term.

---

[2] Petitioner's motion did not indicate under which provision of § 440 he was seeking relief.  (See Notice of Motion, attached as Ex. G to Response.)  In its decision, the Sullivan County Court treated Petitioner's motion as a motion to vacate under § 440.10 and a motion to set aside a sentence under § 440.20.  See People v. Stevens, 64 A.D.3d 1051, 1054, 883 N.Y.S.2d 369, 371 (3d Dep't 2009).

[3] The Memorandum of Law did not discuss the Strickland standard or whether Mr. Kroll's representation fell below that of an objectively reasonable attorney.

The motion included an affidavit from Petitioner describing the original plea offer of fifteen years in prison negotiated by Mr. Lesser, Mr. Kroll's advice about how to "beat" the case, and the resulting plea agreement in which Petitioner received a twenty-five year sentence. (See id.)  In addition, the motion included an affirmation prepared by Petitioner's attorney, Mr. John Ferrara, detailing Mr. Kroll's shortcomings when representing Petitioner. (See Affirmation of John Ferrara ("Ferrara Aff."), attached as Ex. G to Response.)  Mr. Ferrara described Mr. Kroll's attempts to bribe the witnesses (see id. ¶¶ 3-10), the lack of materials in Mr. Kroll's case file (see id. ¶ 14), Mr. Kroll's failure to visit Petitioner in jail (see id. ¶ 15), and Mr. Kroll's failure to instruct Petitioner to assert his Fifth Amendment privilege when called to testify in Family Court (see id. ¶ 16).

The People opposed Petitioner's § 440 motion, arguing that at the time Petitioner rejected the plea offer, Mr. Lesser was still the attorney of record and, therefore, Petitioner had effective assistance of counsel. (See Lungen Aff. at 8 ¶ 26.)  The People argued that this effective assistance was not nullified by Petitioner following the admittedly unsound advice of another attorney.  The People further argued that Mr. Kroll's advice did not cause Petitioner to reject the plea offer. (See id. at 8 ¶ 28.)

The Sullivan County Court denied Petitioner's § 440 motion. (See Sullivan County Court's July 7, 2008 Decision and Order ("Sullivan Cnty Ct. July 7, 2008 Decision"), attached as Ex. I to Response.) The court held that Petitioner's failure to provide affidavits, other than his own, from persons with knowledge regarding Mr. Kroll's ineffective assistance, was fatal to Petitioner's claim. (See id. at 3.) The court also found that at the time Petitioner rejected the plea offer he was still represented by Mr. Lesser, who was not ineffective. The court concluded, "[i]n short, the defendant has no grounds to argue ineffective assistance of counsel when the advice he alleges to be ineffective did not come from his counsel." (See id. at 4.)

Petitioner appealed the court's decision, and the Appellate Division, Third Department, affirmed the lower court's decision. See People v. Stevens, 64 A.D.3d 1051, 1054-55, 883 N.Y.S.2d 369, 371-72 (3d Dep't 2009). The Third Department found that the remedy sought by Petitioner — reinstatement of the initial plea offer — was unavailable under law, as "[the plea offer] was never placed upon the record or approved by the County Court." Id. at 1054, 883 N.Y.S.2d at 371. Moreover, "[h]aving rejected the initial plea, [Petitioner] cannot demonstrate any reliance thereon. Finally, as defendant admits to being fully complicit in an alleged illegal scheme, he is clearly not entitled to specific performance of the

10

initial pleas agreement 'as a matter of essential fairness.'" <u>Id.</u>
(citations omitted). The court went on to find that Petitioner
"was fully and properly apprised of his legal position by his first
counsel, who had negotiated the favorable proposal on his behalf
and who was still his counsel of record when he rejected it." <u>Id.</u>
at 1054, 883 N.Y.S.2d at 372. Finally, the court observed: "Though
he alleges that his second attorney led him into this misconduct,
no legal education was required to understand that bribing these
two young victims in an effort to avoid their testimony was
criminal conduct directly designed to undermine the legal process."
<u>Id.</u>

Petitioner sought leave to appeal the Third Department's
decision, which the Court of Appeals denied on October 30, 2009.
<u>See</u> <u>People v. Stevens</u>, 13 N.Y.3d 839, 890 N.Y.S.2d 455 (2009).

B. <u>Habeas Petition</u>

On April 15, 2010, Petitioner filed the instant Petition.
Petitioner filed the Petition in the Northern District of New York,
but the case was transferred to this Court on April 28, 2010. In
his Petition, Petitioner claimed ineffective assistance of counsel
under the Sixth and Fourteen Amendments, stating "[b]y advising me
. . . that I could beat my case via the commission of a crime Mr.
Glenn Kroll . . . provided ineffective assistance of counsel and

undermined the sound legal advice of predecessor counsel." (Pet. at 6.)

In its Answer to the Petition, Respondent argues that Petitioner never raised his current ineffective assistance of counsel claims in state court. (See Answer at 7 ¶ 23.) Specifically, Respondent argues that in his § 440 state court proceeding, Petitioner did not seek to vacate his convictions, as he does now, but sought only to obtain specific performance of the initial plea agreement. (See id.) Petitioner requested an extension of time to reply and was allowed until January 21, 2011 to file a reply. (See Order, dated Dec. 21, 2010.) On January 15, 2011, Petitioner requested that the Court hold this proceeding in abeyance while he exhausted his state remedies. (See Letter from James Stevens, dated Jan. 15, 2011.) On February 11, 2011, Jonathan I. Edelstein filed a notice of appearance for the sole purpose of representing Petitioner on the stay-and-abeyance application. (See Notice of Appearance, dated Feb. 11, 2011.) The Court requested additional information from the parties before issuing a decision on the request for stay and abeyance. (See Order, dated Feb. 2, 2011.) Both parties provided affidavits in response to the Court's Order, and on July 11, 2011, the Court denied Petitioner's request for stay and abeyance. (See Order, dated July 11, 2011.)

12

In the July 11, 2011 Order, the Court directed Petitioner to file any response to the State's opposition to the Petition by August 5, 2011.  Petitioner has not submitted a response.

C. Renewed § 440 Proceeding

On January 28, 2011, while this Court was deciding Petitioner's request for stay and abeyance, Petitioner filed a motion to renew his § 440 motion in the Sullivan County Court. (See Petitioner's Response to Order of Feb. 2, 2011, at 3 ¶ 9.) Respondent argued that this motion was not a motion to renew but an entirely new § 440 motion.  (See Respondent's Response to Order of Feb. 2, 2011, at 5 ¶ 27.)  Although the substantive basis of the motion was identical to that presented in Petitioner's initial § 440 motion, the relief sought was different: instead of requesting resentencing to a determinate fifteen-year prison sentence, Petitioner was now requesting vacating his sentence.  The Sullivan County Court denied Petitioner's motion to renew on the grounds that "[a] 440 motion must be denied if the issue presented was previously determined upon an appeal or unjustifiably was not raised on said appeal."  People v. Stevens, Indt. 151-07, 177-07, slip op. at 3 (Sullivan Cnty Ct. July 8, 2011) (citation omitted). In addition, the court determined that Petitioner's motion was a new § 440 motion, not a renewal, and that Petitioner had failed to

13

put forth any new evidence that would alter the original decision.

See id.

### DISCUSSION

Petitioner seeks to vacate his conviction on the grounds that he was denied the effective assistance of counsel when his second attorney, Mr. Kroll, advised him to reject the initial plea offer and pursue an illegal course of action to "beat" the charges against him. (See Pet. at 6.)  Respondent argues that Petitioner's claim is waived, unexhausted, and without merit.[4]

---

[4]Petitioner signed a waiver of appeal when he entered his guilty plea, in which he waived his "right to appeal from the judgment of conviction or sentence." (See Petitioner's Waiver of Appeal, attached as Ex. K to Response.)  The waiver applied to "all issues that may validly be waived," including Petitioner's "right to file motions to vacate [Petitioner's] conviction and set aside [Petitioner's] sentence under CPL Article 440 and 330, [Petitioner's] rights to file habeas corpus petitions to challenge [Petitioner's] conviction in state and federal court . . . ." (Id.)  At the plea allocution on September 17, 2007, the waiver of appeal was entered into the record. (See Plea Minutes Sept. 17, 2007 ("Plea Minutes"), attached as Ex. E to Response at 18.)  The judge explained to Petitioner: "Also this plea bargain, as all plea bargains in this county, includes a waiver of appeal. You're giving up your right to appeal your conviction, to appeal anything with respect to this case in return for the plea bargain." (Id.)  Although Petitioner acknowledged that he understood the terms of the waiver of appeal, the judge did not state on the record that the waiver included § 440 motions to vacate and federal habeas proceedings.  Moreover, at the sentencing hearing on October 23, 2007, both the County Court judge and the prosecution agreed that Petitioner could pursue a § 440 motion to challenge his sentence. (See Sentencing Minutes Oct. 23, 2007 ("Sentencing Minutes"), attached as Ex. F to Response at 3-5.)  The judge specifically stated, "Mr. Kroll,

14

I.   AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act
("AEDPA"), a federal court may not grant habeas relief on a claim
adjudicated on the merits by a state court unless the state court's
adjudication of a petitioner's claim "resulted in a decision that
was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court
of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based
on an unreasonable determination of the facts in light of the
evidence presented in the State court proceeding."   Id. §
2254(d)(2).

---

with respect to any 440 application, those rights certainly can
be preserved, any 440 application would be filed after the
sentencing and prior to any appeal in order to protect any
appellate rights that might have arisen."  (Id. at 4-5.)  Under
New York State law, a waiver of appeal is only valid if it is
"made knowingly, intelligently, and voluntarily."  People v.
Lopez, 844 N.E.2d 1145, 1149, 811, N.Y.S.2d 623, 627 (2006)
(citation omitted).  "[The trial court] must make certain that a
defendant's understanding of the terms and conditions of a plea
agreement is evident on the face of the record."  Id. (citing
People v. Callahan, 604 N.E.2d 108, 112, 590 N.Y.S.2d 46, 50
(1992)).  Here, the trial court did not advise Petitioner that
the waiver of appeal included a waiver of the right to seek post-
conviction relief, and the trial court specifically told
Petitioner that he could proceed with a § 440 claim following
sentencing.  No mention was made of habeas proceedings.  Under
such circumstances, this Court cannot conclude that Petitioner
knowingly and voluntarily waived his right to seek post-
conviction relief, including the right to file a habeas petition
in federal court.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000); accord Hoi Man Yung v. Walker, 468 F.3d 169, 176 (2d Cir. 2006); Ernst J. v. Stone, 452 F.3d 186, 193 (2d Cir. 2006). The phrase, "clearly established Federal law," limits the law governing a habeas petitioner's claims "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (quoting Williams, 529 U.S. at 412, 120 S. Ct. at 1523); accord Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006).

"The 'unreasonable application' standard is independent of the 'contrary to' standard . . . [and] means more than simply an 'erroneous' or 'incorrect' application [of federal law]." Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (citing Williams, 529 U.S. at 410, 120 S. Ct. at 1522). A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal rule, but applies it in an unreasonable manner to the facts of a particular case. See

16

Williams, 529 U.S. at 413, 120 S. Ct. at 1523.   The inquiry for a federal habeas court is not whether the state court's application of the governing law was erroneous or incorrect, but, rather, whether it was "objectively unreasonable." See id. at 408-10, 120 S. Ct. at 1521-22; see also Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) ("[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently.   The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable.") (citation omitted).

Moreover, under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.   The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).   A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

## II. Ineffective Assistance of Counsel

Petitioner claims that he was denied effective assistance of counsel because his second attorney, Mr. Kroll, advised him to reject the initial plea bargain offer of a determinate fifteen-year prison sentence and encouraged him to pursue an illegal course of

action — bribing witnesses — to "beat" the charges.   (See Pet. at 6.)

Petitioner included this claim in his application for post-conviction relief pursuant to New York Criminal Procedure Law § 440, both in his original § 440 motion and his renewed motion.   The first motion was decided on the merits by both the County Court and the Appellate Division.   See People v. Stevens, 64 A.D.3d 1051, 1053-54, 883 N.Y.S.2d 369, 371-72 (3d Dep't 2009).   Because a state court decided Petitioner's claim on the merits, § 2254(d) of AEDPA applies, and Petitioner is only entitled to relief if the state court's decision was contrary to or an unreasonable application of clearly established federal law, or involved an unreasonable determination of the facts in light of the evidence presented to the state court.   See § 2254(d)(1)-(2).

Respondent argues, however, that Petitioner sets forth claims in the instant Petition that are fundamentally different from those Petitioner raised in his § 440 motion.   Specifically, Respondent asserts that in his original § 440 motion, Petitioner sought specific performance of the original plea, that is, resentencing to a determinate sentence of fifteen years.   In the instant Petition, Petitioner seeks to vacate the conviction and sentence.   Rather than engage in an analysis of the remedies requested in the prior state court proceedings and in the instant proceeding in order to

18

determine if Petitioner's claim is exhausted, this Court will address Petitioner's ineffective assistance of counsel claim on the merits. See 28 U.S.C. § 2254 (b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the [petitioner] to exhaust the remedies available in the courts of the State."); Greiner v. Wells, 417 F.3d 305, 318 n.14 (2d Cir. 2005), cert. denied Wells v. Ercole, 546 U.S. 1184, 126 S. Ct. 1363 (2006).

A. Legal Standard

Claims of ineffective assistance of counsel are evaluated under a two-part test. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). First, the petitioner must establish that his attorney's performance was so deficient that it "fell below an objective standard of reasonableness." Id. at 466, 104 S. Ct. at 2064. In applying the first prong of the Strickland test, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689, 104 S. Ct. at 2065 (internal quotation marks and citation omitted). Moreover, to establish ineffective counsel "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S. Ct. at 2064.

To satisfy the second part of the Strickland test, a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068; see also Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) ("A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal."). Failure to show either deficient performance or sufficient prejudice defeats the ineffectiveness claim. See Strickland, 466 U.S. at 700, 104 S. Ct. at 2071.

The two-part Strickland standard for ineffective assistance of counsel applies to claims arising out of the plea process. See Hill v. Lockhart, 474 U.S. 52, 57-58, 106 S. Ct. 366, 369-70 (1985) ("We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."). In challenging a plea, the first prong of Strickland remains the same. See id. at 58, 106 S. Ct. at 370. However, the second prong, prejudice, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 59, 106 S. Ct. at 370; accord United

20

States v. Coffin, 76 F.3d 494, 498 (2d Cir. 1996) (quoting Hill, 474 U.S. at 59, 106 S. Ct. at 370.) When a petitioner claims that ineffective assistance of counsel caused him to reject a plea, as in the instant case, to establish prejudice the "[petitioner] must demonstrate a reasonable probability that but for counsel's deficient performance, he would have pled guilty instead of going to trial." Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011) (citing Purdy v. United States, 208 F.3d 41, 49 (2d Cir. 2000), cert. denied, 525 U.S. 1020, 1192 S. Ct. 548 (1998); Cullen v. United States, 194 F.3d 401, 405 (2d Cir. 1999)).

For the purposes of AEDPA, it is well settled that the Strickland standard constitutes the relevant "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see Aparicio v. Artuz, 269 F.3d 78, 95 & n.8. The Supreme Court recently explained the difficulty of obtaining habeas relief through a claim of ineffective assistance of counsel:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, -- U.S. --, --, 131 S. Ct. 770, 788 (2011)
(internal citations omitted).

    B.  Application

    The state court decisions rejecting Petitioner's claim of
ineffective assistance of counsel were not "unreasonable
application[s]" of or "contrary to" the Strickland standard.  See
28 U.S.C. § 2254(d)(1).  Although neither the County Court nor the
Appellate Division explicitly cited Strickland in their decisions,
they both clearly rejected Petitioner's claim that he received
ineffective assistance of counsel.  Cf. Harrington, -- U.S. at --,
131 S. Ct. at 784 ("[A] state court need not cite or even be aware
of our cases under § 2254(d).  Where a state court's decision is
unaccompanied by an explanation, the habeas petitioner's burden
still must be met by showing there was no reasonable basis for the
state court to deny relief.") (citation omitted).

    The County Court held that Petitioner "ha[d] no grounds to
argue ineffective assistance of counsel when the advice he
allege[d] to be ineffective did not come from his counsel."  (See
Sullivan Cnty Ct. July 7, 2008 Decision at 4.)  The Appellate
Division affirmed on a variety of grounds.  In its decision, it
rejected Petitioner's argument that he was entitled to a hearing
"in view of [the] County Court's second finding that even if
defendant's allegations were true, they would not give rise to a

claim of ineffective assistance of counsel." <u>People v. Stevens</u>, 64
A.D.3d at 1054 n.1, 883 N.Y.S.2d at 371 n.1.  It further found that
Petitioner could not have reasonably relied on second counsel's
alleged advice since "no legal education was required to understand
that bribing these two young victims in an effort to avoid their
testimony was criminal conduct directly designed to undermine the
legal process." <u>Id.</u> at 1054, 883 N.Y.S.2d at 372.  Petitioner has
not demonstrated that under clearly established Supreme Court law
the state courts' decisions were unreasonable.

Despite Mr. Kroll's alleged egregious conduct, Petitioner was
represented by competent counsel when the first plea offer was
extended and rejected.   Following his arrest, Petitioner was
represented by Mr. Lesser, who filed his first notice of appearance
on March 27, 2007. (<u>See</u> Lungen Aff. at 3.)  It was Mr. Lesser who
was able to negotiate the plea offer for Petitioner of a fifteen-
year prison sentence.  On May 19, 2007, he met with Petitioner,
reviewed the evidence with Petitioner, and, in light of the strong
evidence against Petitioner and the fact that Petitioner was facing
a sentence of twenty-five years on multiple Class B felonies,
recommended that Petitioner accept the plea offer. (<u>See</u> First
Counsel's Letter.)  Mr. Lesser also informed Petitioner of other
possible charges the state could bring against him. (<u>See</u> <u>id.</u>)
Although Petitioner had consulted with Mr. Kroll by this time, Mr.

23

Lesser was still his attorney of record.   (See Stevens Aff. at 1
¶ 4.)  On May 21, 2007, Petitioner called Mr. Lesser and informed
him of his rejection of the plea offer and his intention to retain
new counsel.

    The record thus makes clear that Mr. Lesser did everything
competent counsel should do in advising Petitioner on the plea
offer.  "In the context of a defense counsel's advice surrounding
a plea offer, '[a] lawyer shall explain a matter to the extent
reasonably necessary to permit the client to make informed
decisions regarding the representation.'"  Carrion v. Smith, 365
Fed. App'x 278, 280-81 (2d Cir. 2010)(citing Purdy v. United
States, 208 F.3d 41, 45 (2d Cir. 2000), cert. denied, 525 U.S.
1020, 1192 S. Ct. 548 (1998)).  "As part of this advice, counsel
must communicate to the defendant the terms of the plea offer, and
should usually inform the defendant of the strengths and weaknesses
of the case against him, as well as the alternative sentences to
which he will most likely be exposed."  Purdy, 208 F.3d at 45
(internal citations omitted).  "[K]nowledge of the comparative
sentence exposure between standing trial and accepting a plea offer
will often be crucial to the decision whether to plead guilty."
United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (per
curiam) (citation and internal quotation marks omitted).

Petitioner points to no holdings of the Supreme Court that were unreasonably applied by the state courts when they concluded that he received effective assistance from Mr. Lesser.  Nor has he pointed to any clear holdings of the Supreme Court that would support his position that his conviction should be overturned because an attorney with whom he consulted, who was not his attorney of record, gave him improper advice.  While all attorneys are subject to professional and ethical rules, whether or not they have entered an appearance on behalf of an individual in a court proceeding, there is simply no authority for the proposition that a conviction can be vacated because a defendant, who is represented by an attorney in a criminal proceeding, chooses to consult with another counsel who gives him poor advice.  Because there is no constitutional right to consult with a second attorney, while represented in a criminal proceeding by another attorney who is unquestionably competent, the consulting attorney's conduct does not implicate the Sixth Amendment right to the effective assistance of counsel.  Cf. United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997) ("Absent a constitutional right to standby counsel, a defendant generally cannot prove standby counsel was ineffective."); see also Liriano v. United States, No. 08 Civ. 5568 (DAB), 2009 WL 2972519, at *4 (S.D.N.Y. Sept. 16, 2009) (rejecting a claim of ineffective assistance of counsel where the alleged

25

wrongful advice was rendered before the attorney became the attorney of record), <u>aff'd on other grounds</u>, <u>United States v. Acevedo-Colon</u>, 417 Fed. App'x 46 (2d Cir. 2011); <u>People v. Lange</u>, 21 Misc. 3d 6, 867 N.Y.S.2d 848, 851-52 (Sup. Ct. App. Term 9th and 10th Judicial Districts 2008) (where a defendant consulted with an immigration attorney about the consequences of his guilty plea and received misinformation, the court held that "since the immigration attorney was not the attorney of record herein, and no claim has been made that defense counsel made any affirmative misstatements to defendant regarding the immigration consequences of a criminal conviction," defendant could not prevail on an ineffective assistance claim).

In sum, the state courts' conclusion that Petitioner was not denied effective assistance of counsel because at the time Mr. Kroll rendered his bad advice Petitioner was represented by competent counsel, is not contrary to or an unreasonable application of clearly established federal law.  This conclusion alone disposes of Petitioner's ineffective assistance claim.

Additionally, the state courts' conclusion that Petitioner was not prejudiced by Mr. Kroll's advice is not contrary to or an unreasonable application of clearly established federal law.  To establish prejudice, Petitioner must show that, but for Mr. Kroll's ineffective assistance of counsel, he would have accepted the plea

offer.  See Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011).  However, in the affidavit he submitted in support of his § 440 motion, Petitioner admitted that he was "unhappy" with the severity of the initial plea offer (see Stevens Aff. at 1 ¶ 2) and advised Mr. Lesser that he would accept it with "great reluctance" (see id. at 1 ¶ 2).  Petitioner also admitted that he decided to use the time when Mr. Lesser was on vacation "to [his] advantage" and to seek second opinions from other attorneys.  (See id. at 1 ¶ 4-5.) Petitioner, therefore, had a strong inclination to reject the plea even before he consulted with Mr. Kroll, and it was not unreasonable for the Appellate Division to conclude that Mr. Kroll did not lead Petitioner to reject the plea offer.  See People v. Stevens, 64 A.D.3d at 1054, 883 N.Y.S.2d at 372.

But, even more compelling is the Appellate Division's conclusion that though Petitioner alleges "that his second attorney led him" into a scheme to bribe his "two young victims" in an attempt to prevent their testimony, "no legal education was required to understand" that such a scheme was criminal.  Id. at 1054, 883 N.Y.S. 2d at 372.  In effect, the Appellate Division rejected the proposition that "but for" the advice of Mr. Kroll Petitioner would have accepted the plea offer.  There can be no reasonable reliance on the patently illegal advice of a consulting attorney that would enable a defendant to reclaim the right to a favorable plea offer

27

that was rejected over the advice of competent counsel of record. This conclusion does not reflect an unreasonable application of the Strickland standard.

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that Petitioner's request for habeas relief be denied and that this action be dismissed with prejudice. Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court recommends that no certificate of appealability be issued. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y. State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000). The Court further recommends that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from its order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ.P.6(a) and (d) (2008). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard J. Holwell, United States District Judge, and to the chambers of the undersigned, Room 1660.

28

Any requests for an extension of time for filing objections must be directed to Judge Holwell.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140, 145, 155, 106 S. Ct. 466, 470, 475 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully submitted,

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE


Dated: December 19, 2011
       New York, New York